## S. M. BARNES *vs.* HEKLA FIRE INS. CO.

Submitted on briefs Nov. 17, 1893.    Affirmed Dec. 29, 1893.

No. 8372.

**Reinsurance defined.**

A simple contract of reinsurance between insurance companies is a contract of indemnity, in which the insurer reinsures risks in another company, and is solely for the benefit of the latter, and not of the policy holders.

**But a promise to pay the policy holder gives him a right of action against the reinsurer.**

But, where such contract also includes a promise or agreement to assume and pay the losses of policy holders, actions, in case of loss, may be brought by them directly against the reinsurer, upon such promise or undertaking.

**An action against either is not a bar to an action against the other.**

In such case the policy holder may sue either company. But the remedies are not inconsistent, and he is not put to an election. He may have an action against each, though he can have but one satisfaction. So, if he file his claim in insolvency proceedings against one, it is no bar to his action against the other.

**Doctrine of novation is not applicable.**

Neither is the doctrine of novation applicable to such a case.

**The "American Doctrine" considered.**

The nature of the agreement between two parties, where one agrees, upon a consideration moving from the other, to pay a debt due from the latter to a third person, considered, and *held* not to constitute a novation, on the mere consent to or adoption of such agreement, by such third party creditor.

Appeal by defendant, the Hekla Fire Insurance Company of St. Paul, from an order of the District Court of Ramsey County, *John W. Willis,* J., made May 15, 1893, sustaining a demurrer to its second and third answers in the action.

The complaint of Mrs. S. M. Barnes stated that on April 10, 1891, defendant insured her house at Jonesboro, N. C., for three years against fire in the sum of $1,500, that the house was burned on March 11, 1892, that she had given notice and furnished proofs, but had not been paid, and she asked judgment for the $1,500.

The defendant answered admitting the insurance and the fire, but denying any knowledge as to the other facts alleged. For a second answer defendant alleged that the plaintiff was and is a citizen and resident of North Carolina and not of Minnesota and that the District Court has no jurisdiction of the parties to the action or of the subject matter thereof. For a third answer defendant alleged that the St. Paul German Insurance Company reinsured the property and agreed with the plaintiff and defendant before the fire to pay plaintiff any loss she might suffer under the policy. That the St. Paul German Insurance Company thereafter on April 14, 1892, being insolvent, made an assignment of all its property under Laws 1881, ch. 148 as amended, to Jacob F. Franzen in trust for its creditors and that plaintiff proved and filed her claim against it with him for payment in the due course of the insolvency proceedings.

The plaintiff demurred to the second and third answers and specified as ground of objection that they do not state facts sufficient to constitute a defense. The trial Court sustained the demurrer and defendant appeals.

*C. D. & Thos. D. O'Brien,* for appellant.

Subject to the opinion of this Court in *Henry* v. *Bruns,* 43 Minn. 295, we respectfully submit that the provisions of 1878 G. S. ch. 68, § 19 make the filing of a bond for costs by a non-resident plaintiff a condition precedent to his right to bring an action.

The third answer constitutes a defense to the extent of the dividend to be received by the plaintiff upon her claim in the insolvency proceedings.

*B. H. Schriber,* for respondent.

Defendant may now be in equity but a surety for the St. Paul German Insurance Company. But a suit against a surety will not be delayed because the principal has been adjudged a bankrupt, and the claim has been filed in the bankruptcy proceedings. The surety should pay the claim and prove it against the estate of the principal. 1 Brandt, Suretyship, § 97; *Gregg* v. *Wilson,* 50 Minn. 490.

VANDERBURGH, J. The plaintiff demurred to the second and third defenses set up in the defendant's answer, and this appeal is from the order sustaining the demurrer.

The action is brought upon a policy of insurance issued by the defendant to the plaintiff for a loss covered thereby. It is alleged, by way of defense, that subsequent to the date of plaintiff's policy the St. Paul German Insurance Company, a corporation lawfully doing business in this state, had "reinsured the said policy, and promised and agreed with the said plaintiff and this defendant to pay to the plaintiff any loss which she might suffer under said policy, and said agreement was in full force and effect at the time of the pretended occurrence of the fire described in the complaint, if any such fire did occur, and that said plaintiff had always full notice and knowledge thereof." It further appears that thereafter, and before the commencement of this action, the St. Paul German Insurance Company duly made an assignment under the insolvency laws of the state, and that the plaintiff has duly filed and proved her claim in the insolvency proceedings for the loss indemnified against by defendant, and so assumed by the German Insurance Company. It is claimed by the defendant in this action that, by electing to proceed against the estate of the German Insurance Company, the plaintiff has effectually waived her remedy against the defendant upon the policy sued on.

It will be conceded that the agreement between the two companies set out in the answer is not merely a contract of reinsurance, but also to pay, and assume the payment of, losses of parties indemnified by policies issued by the defendant company reinsured. Reinsurance is a mere contract of indemnity, in which an insurer reinsures risks in another company. In such a contract the policy holders have no concern, are not the parties for whose benefit the contract of reinsurance is made, and they cannot, therefore, sue thereon. But the agreement alleged in this case is not a mere reinsurance of the risks by the reinsurer, but it embraces also an express agreement to assume and pay losses of the policy holder, and is therefore an agreement upon which he is entitled to maintain an action directly against the reinsurer. *Johannes* v. *Phenix Ins. Co.,* 66 Wis. 50, (27 N. W. 414.)

This is not, however, a case where the insurer is put to an election between his remedies against the two companies.

Unless there was a substitution of debtors, in the nature of a novation, between the three parties, upon the plaintiff's consent to the new agreement, the plaintiff has not waived or lost her right of action against the defendant. A creditor is put to an election only where his remedies are inconsistent, and not where they are consistent and concurrent. In the latter case a party may prosecute as many as he has, as in the case of several debtors. And so, if, in this instance, the remedy against the insolvent company, as respects the plaintiff, was merely cumulative, there is no reason why she may not pursue either or both. As between the two companies, the defendant occupies no better position than a surety. It is not like the case of a former suit pending between the same parties. She may have an action against each at the same time, but only one satisfaction; and to this end the court may interpose by a stay, when found necessary. But an action against the party primarily or originally liable in such cases may be necessary, in order to save rights under the statute of limitations, or for like reasons.

The new agreement between the companies referred to, which inured to plaintiff's benefit, lacks the essential elements of novation.

It is not alleged that it was mutually understood or agreed between the two companies that the liability of the defendant should be discharged, and the new promisor should be substituted and accepted as plaintiff's debtor in the place of the defendant, or that plaintiff ever assented to or adopted any such thing.

In some few cases,—notably, in Rhode Island,—it is held that such an agreement necessarily implies an intention to substitute the new for the original debtor, and that the creditor, in assenting to it, adopts it as a substitutional agreement. *Urquhart* v. *Brayton*, 12 R. I. 172; *Wood* v. *Moriarty*, 15 R. I. 522, (9 Atl. 427.) But this, we think, is importing a stipulation into the agreement by construction which the parties have not made. It is frequently the case that the creditor consents to the arrangement as a favor, or for the convenience of his debtor; and we apprehend it would be a surprise to the parties, as well as an injustice, in many cases, if

it were held to operate as a release of the original liability; and therefore it should distinctly appear, from the express terms of the agreement, or as a necessary inference from the situation of the parties, and the special circumstances of the case, that such was the intention and understanding of the parties, of which the creditor was chargeable with notice, and this is the generally accepted doctrine of the courts.    11 Amer. & Eng. Enc. Law, 889, 890.

In the early case of *Farley* v. *Cleveland,* 4 Cow. 432, in which this remedy of a creditor, upon a promise for his benefit made to his debtor, upon a consideration moving from the latter, is elaborately considered, the fact of the subsisting liability of the original debtor is recognized, and held no obstacle to the right of recovery by the third party creditor, and such continued liability is generally assumed by the courts.

The exact ground upon which the direct liability to the creditor in this class of cases should be placed, appears to be left in doubt by the cases.

It is called the "American doctrine," because peculiar to the courts of this country, though all do not assent to it,—notably, those of Massachusetts.

It is an equitable rule, adopted for convenience, and to avoid circuity of action, and the formality of an assignment by the original debtor of the new agreement with him, and is strictly in accordance with the intention of the parties to the contract in creating a liability in favor of a third party creditor.    *Gifford* v. *Corrigan,* 117 N. Y. 264, 265, (22 N. E. 756.)    The same rule of procedure is held applicable, though not uniformly, where the grantee of a mortgagor assumes in his deed to pay off the incumbrance.

The mortgagee may proceed by action directly against the grantee, but the mortgagor still remains liable, and is held to occupy the relation of surety for the grantee, who, as between them, becomes the principal debtor.    *Thorp* v. *Keokuk Coal Co.,* 48 N. Y. 257, 258; *Klapworth* v. *Dressler,* 78 Am. Dec. 76, 77, note.

There is no double liability.    There is no dividend, as yet, shown in the insolvency proceedings; and there is, of course, nothing to be credited upon the plaintiff's claim.    The receipt of a dividend would only operate as a *pro tanto* satisfaction; and, if defendant is re-

quired to pay before the dividend, it will be entitled to it, and may be subrogated to the rights of plaintiff therein, so that there need be no embarrassment in adjusting the rights of the parties.

Other questions in the case do not, we think, demand any discussion.

Order affirmed.

(Opinion published 57 N. W. Rep. 314.)

